# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| JERRY AGOSTINI,<br>    Petitioner, | Case No. 1:18-cv-862 |
| vs. | Barrett, J.<br>Bowman, M.J. |
| WARDEN, PICKAWAY<br>CORRECTIONAL INSTITUTION,<br>    Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, an inmate in state custody at the Pickaway Correctional Institution, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is before the Court on the petition and respondent's return of writ, to which petitioner has not responded. (Doc. 5). As noted below, petitioner has also filed a motion to supplement Ground One (Doc. 6), a motion to supplement the record (Doc. 9), and a motion for transcripts. (Doc. 12).

## I. FACTUAL BACKGROUND

The Ohio Court of Appeals set forth the following summary of trial evidence and facts leading to petitioner's conviction and sentence:[1]

> [¶2] On August 28, 2015, appellant was indicted in Warren County Court of Common Pleas Case No. 15CR31283 on the following counts: one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), a felony of the second degree; eight counts of grand theft of a motor vehicle by deception in violation of R.C. 2913.02(A)(3), felonies of the fourth degree; ten counts of theft by deception in violation of R.C. 2913.02(A)(3), where three counts were felonies of the fourth degree and seven counts were felonies of the fifth degree; two counts of attempted grand theft of a motor vehicle by deception in violation of R.C. 2913.02(A)(3) and 2923.02(A), felonies of the fifth degree; one count of attempted

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

theft by deception in violation of R.C. 2913.02(A)(3) and 2923.02(A), a felony of the fifth degree; two counts of receiving stolen property of a motor vehicle in violation of R.C. 2913.51(A), felonies of the fourth degree; four counts of receiving stolen property in violation of R.C. 2913.51(A), where two counts were felonies of the fourth degree and two were felonies of the fifth degree; and one count of theft of a check by deception in violation of R.C. 2913.02(A)(3), a misdemeanor of the first degree.

[¶3] On December 21, 2015, appellant was indicted in Warren County Court of Common Pleas Case No. 15CR31555 on one count of identity fraud in violation of R.C. 2913.49(B)(1) and one count of forgery in violation of R.C. 2913.31(A)(1), felonies of the second degree as the victim of the offenses, Don Weber, was an elderly person.

[¶4] The charges arose out of appellant's conduct between January 21, 2014, and February 25, 2015, wherein appellant used his company, Engineered Environmental, LLC, false financial documents, and the identity of others to obtain or attempt to obtain 12 motor vehicles and various pieces of commercial construction equipment from car dealerships and businesses located in Fort Mitchell, Kentucky and Cuyahoga, Warren, and Hamilton Counties in Ohio. Engineered Environmental was a home improvement company that had three bank accounts with Chase Bank. Bank records for these accounts indicated that the highest balance in any of these accounts was $375. Appellant, however, represented his business as a multimillion dollar business and presented false financial statements to car dealerships and the dealerships' credit companies in order to obtain financing for vehicles. Appellant presented documentation purportedly for Engineered Environmental for the years ending in December 2012 and December 2013. The financial documents falsely claimed to have been audited by the prestigious accounting firm "DeLoitte & Touche, USA, LLP" and set forth a gross profit for Engineered Environmental of $3,077,000 in 2012 and $3,427,300 in 2013 and a net income of $350,500 in 2012 and $376,300 in 2013.

[¶5] Using these false documents and either his own identity or that of Robert Yenke or Don Weber, appellant deceptively obtained vehicles or commercial equipment for his business. When obtaining the vehicles, appellant would also exploit the sales practice of financing "upfit" improvements to the vehicles to fraudulently obtain cash for vehicle upgrades that were never completed. In a typical upfit transaction, a customization is performed by a company that receives a referral from the vehicle dealership. The cost of the upfit is estimated and is added to the customer's loan amount for the vehicle purchase. When the loan proceeds become available, the dealership pays the upfit provider directly after receiving an invoice. The customer makes monthly payment towards the loan, and this payment is applied towards the cost of the vehicle and the cost of the upfit.

[¶6] Appellant did not follow this practice with respect to upfitting the vehicles he fraudulently obtained. Rather than using a business known to the dealerships for the upfit work, appellant claimed the work was completed by various businesses with whom he had a relationship. Appellant produced false invoices from these businesses claiming that the upfit work had been completed and paid for by appellant's business, even though no work had been started or completed on the vehicles. The dealerships then sent checks to Engineered Environmental for the cost of the upfit work appellant alleged he had already paid. Appellant cashed these checks at various CheckSmart locations. Through his deceptive actions, appellant was able to obtain over $75,000 in cash for upfit work that was never performed.

[¶7] Eventually law enforcement was apprised of appellant's conduct and an investigator in the economic crime unit of the Ohio Attorney General's Office began looking into the matter. This investigation led to the charges set forth in the indictments.

(Doc. 4, Ex. 22 at PageID 224-26) (footnotes omitted).

## II. PROCEDURAL HISTORY

### State Trial Proceedings and Direct Appeal

On August 28, 2015, the Warren County, Ohio, grand jury returned a twenty-nine-count indictment charging petitioner with eight counts of grand theft of a motor vehicle by deception, ten counts of theft by deception, two counts of attempted grand theft of a motor vehicle by deception, four counts of receiving stolen property, two counts of receiving stolen property of a motor vehicle, and one count each of engaging in a pattern of corrupt activity, theft of a check by deception, and attempted theft by deception. (*See* Doc. 4, Ex. 1).

On December 21, 2015, the Warren County, Ohio, grand jury returned a second indictment, charging petitioner with one count each of identity fraud and forgery. (Doc. 4, Ex. 8). The two indictments were consolidated for trial. (Doc. 4, Ex. 10). The trial court appointed petitioner counsel. (*See* Doc. 4, Ex. 2, 3, 6).

3

Prior to trial, through counsel, petitioner filed a motion to dismiss counts two through ten of the indictment. (Doc. 4, Ex. 11). Petitioner's motion was overruled by the trial court.

On February 2, 2016, following a jury trial, petitioner was found guilty of all charges. (Doc. 4, Ex. 12, 13, 14). Petitioner was sentenced to serve a total aggregate prison sentence of nineteen-years in the Ohio Department of Corrections.[2] (*See* Doc. 4, Ex. 15, 16).

Petitioner, through new counsel, filed a timely notice of appeal. (Doc. 4, Ex. 18). Petitioner raised the following five assignments of error in his appellate brief:

1. The trial court erred in its jury instructions.

2. Counts 2 through 10 violated double jeopardy.

3. The verdict was against the sufficiency of the evidence.

4. The trial court erred by bringing Mr. Agostini to trial after the 90 day deadline for a speedy trial pursuant to R.C. 2945.71(C) and (E) had passed.

5. Trial counsel provided ineffective assistance of counsel which harmed Mr. Agostini.

(Doc. 4, Ex. 20). On May 30, 2017, the Ohio Court of Appeal overruled petitioner's assignments of error and affirmed the judgment of the trial court. (Doc. 4, Ex. 22).

## Ohio Supreme Court

Petitioner filed a notice of appeal and a motion for a delayed appeal to the Ohio Supreme Court on August 24, 2017. (Doc. 4, Ex. 23, 24). The Ohio Supreme Court granted petitioner's motion on November 1, 2017. (Doc. 4, Ex. 25). Petitioner was ordered to file a memorandum in

---

[2] The trial court determined that fifteen counts in the first indictment were allied offenses of similar import and merged these counts for the purposes of sentencing. (*See* Doc. 4, Ex. 15). The two counts charged in the second indictment were also merged as allied offenses of similar import. (Doc. 4, Ex. 16).

4

support of jurisdiction within thirty days of the Entry granting his motion. (*See id.*). However, the Ohio Supreme Court dismissed the matter for lack of prosecution on December 5, 2017, after petitioner failed to file a jurisdictional memorandum. (Doc. 4, Ex. 26).

Petitioner filed a "motion for leave to vacate and reinstate appeal," on March 9, 2018, which was denied by the Ohio Supreme Court. (Doc. 4, Ex. 27, 28).

### Federal Habeas Corpus

On December 4, 2018, petitioner commenced the instant federal habeas corpus action. (Doc. 1). Petitioner raises the following four grounds for relief in the petition:

> **GROUND ONE**: Counts 2 through 10 Violated Double Jeopardy.
>
> Supporting facts: The State of Ohio separated charges originating in one course of criminal conduct and pursued them separately in the Court of both Clermont and Warren Counties in violation of State v. Urvan, State v. Billingsley.
>
> **GROUND TWO**: Trial Court Erred in its Jury Instructions
>
> **GROUND THREE**: The Verdict was Against the Sufficiency of the Evidence.
>
> **GROUND FOUR**: The Trial Court Erred by bringing Mr. Agostini to Trial Court after the 90 Day Deadline for a Speedy Trial.

(Doc. 1).

Respondent has filed a return of writ in opposition to the petition. (Doc. 5). According to respondent, petitioner procedurally defaulted and waived his grounds for relief. Respondent further contends that the grounds for relief are without merit.

On February 11, 2019, petitioner filed a motion for leave to supplement Ground One (Doc. 6), which is opposed by respondent. (Doc. 8). Petitioner claims that he intended to include the following statement of the claim in Ground One:

**GROUND ONE**: COUNTS TWO THROUGH TEN IN CASE NUMBER 15CR31283 AND BOTH COUNTS IN CASE NUMBER 15CR31555 VIOLATED DOUBLE JEOPARDY WHERE THE DOCTRINE OF COLLATERAL ESTOPPEL BARRED THE SUBSEQUENT PROSECUTION.

Supporting facts:

(a) The Doctrine of Collateral Estoppel of the Double Jeopardy Clause barred the State of Ohio where the second prosecution in Warren County, Ohio required relitigation of factual issues already resolved by the Clermont County, Ohio prosecution. Those counts are affected by the collateral estoppel doctrine.

(b) The Ohio Trial Court and Court of Appeals' decision was contrary to decisions of the Supreme Court, and the state court unreasonably applied the Court's double jeopardy principles to the faces of petitioner's case. *See* 28 U.S.C. § 2254(e). The federal appellate decisions that address this issue hold uniformly that double jeopardy does apply to re-litigation of facts already resolved by the first prosecution. *See, e.g.*, *Ashe v. Swenson*, (1970), 397 U.S. 436, 445-46, 90 S.Ct. 1189, 25 L.Ed.2d 469; *United States v. Dixon*, (1993), 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.3d 556.

(c) The Ohio Trial Court and Court of Appeals made errors in the state court's factual findings in determining Agostini's double jeopardy claim because the courts ignored the conclusive effect of the Clermont County Judgment, and instead relied on the State of Ohio's omissions and misrepresentations as to fact, which is evident in the record, even adopting those omissions and misrepresentations when determining the double jeopardy claims rather than reviewing the first prosecution's record and related documents.

(d) The Ohio Trial Court and Court of Appeals' adjudication of the federal claim was dependent on "an antecedent unreasonable application of federal law." The state courts unreasonably applied the Supreme Court's test established in *Ashe*, involving relitigation of facts already litigated in a prior prosecution. The state courts failed to conduct the collateral estoppel analysis test set forth in *Ashe* which must be decided through an examination of the entire record. The trial court failed to apply the *Ashe* analysis in this case. Instead, it reached the legal conclusion that collateral estoppel did not apply, erroneously relying on the same elements test set forth in *Blockburger v. United States,* 284 U.S. 299, 304 . 52 S.Ct. 180, 76 L.Ed. 306 (1932), instead of the clearly established law on collateral estoppel set forth in *Ashe*. The trial court did not provide a rationale for its merits adjudication of Agostini's double jeopardy claim. The fact finding procedures upon which the state courts relied were not adequate for reaching reasonably correct results, or resulted in a process that appeared to be seriously

> inadequate for the ascertainment of the truth. The court of appeals did not apply *Ashe*, but reached a different factual conclusion than the trial court, concluding that Agostini's crimes caused different harms to different victims. On the basis of this contrary factual finding, the court of appeals also found that collateral estoppel was inapplicable.

(Doc. 6 at PageID 2824).

On February 26, 2019, petitioner filed a "motion to supplement the record and proceed on Ground One" (Doc. 9), which is also opposed by respondent. (Doc. 10). Petitioner seeks to supplement the record to include "(1) the appendix to Agostini's motion to dismiss that the Ohio Trial Court adjudicated; (2) transcripts and related documents from the State of Ohio's first prosecution of Agostini in Clermont County, Ohio; (3) the original notice of appeal and memorandum in support of jurisdiction received in the Office of the Clerk of the Ohio Supreme Court for filing on July 14, 2017." (Doc. 9 at PageID 2952). Petitioner further requests that the Court proceed with Ground One of the petition and stay the remaining claims.

Finally, on July 19, 2019, petitioner filed a motion for transcripts. (Doc. 12).

By separate Order issued this date, the undersigned has granted petitioner's motion to supplement Ground One (Doc. 6) and denied his motion for transcripts. (Doc. 12). Petitioner's motion to supplement the record and proceed on Ground One (Doc. 9) was granted in part, denied in part. The motion was granted to the extent that the notice of appeal and memorandum in support of jurisdiction received in the Office of the Clerk of the Ohio Supreme Court for filing on July 14, 2017 be made part of the record in this case. (*See* Doc. 9 at PageID 3075–95). The motion was denied in all other respects.

## III. THE PETITION SHOULD BE DENIED.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson,* 459 U.S. at 6; *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the default of a federal claim in the state court may preclude federal habeas review if the state court judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the

8

> default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner fails to comply with a state procedural rule that required him to have done something at trial to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).[3] In

---

[3] In *Harris,* the Supreme Court noted that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). The *Harris* Court further noted: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that

cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

Finally, the state court's adequate and independent finding of procedural default will preclude habeas corpus review of the petitioner's federal claims unless the petitioner can show "cause" for the default and "actual prejudice" as a result of the alleged violations of federal law, or that failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner procedurally defaulted his grounds for relief by failing to fairly

---

the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

present his claims to the Ohio Supreme Court. As noted above, petitioner failed to timely file an appeal to the Ohio Supreme Court following the Ohio Court of Appeals' May 30, 2017 decision overruling his assignments of error and affirming the judgment of the trial court. As he argued in filing his motion for a delayed appeal to the Ohio Supreme Court (*see* Doc. 4, Ex. 24 at PageID 251–52), petitioner claims that he timely submitted his appeal by providing the state supreme court with his appeal documents prior to the filing deadline.[4] However, the Ohio Supreme Court corrected any error in the submission of his documents by granting him leave to file a delayed appeal and petitioner then failed to provide a memorandum in support of jurisdiction, as ordered by the Ohio Supreme Court. (*See* Doc. 4, Ex. 25). In failing to do so, petitioner deprived the Ohio Supreme Court of the ability to address his grounds for relief and procedurally defaulted his claims. The Sixth Circuit has held that the Ohio Supreme Court's unexplained entry denying a motion for leave to file a delayed appeal constitutes an adequate and independent state procedural ruling sufficient to bar review of a federal habeas corpus petition. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004) (per curiam); *see also Baker v. Bradshaw,* 495 F. App'x 560, 565 (6th Cir. 2012) (citing *Bonilla* in pointing out that "[t]his court has held that violation of . . .

---

[4] In petitioner's motion for a delayed appeal, petitioner indicated that he submitted his appeal in nine separate envelopes. (*See* Doc. 4, Ex. 24 at PageID 252). He claimed that his notice of appeal was received by the Ohio Supreme Court on July 13, 2017 (prior to the July 14, 2017 deadline), but was returned to him with a letter indicating that it did not comply with the Rules of Practice of the Supreme Court of Ohio for its failure to include a memorandum in support of jurisdiction. Petitioner claimed that he submitted the memorandum in support of jurisdiction on July 14, 2017, which was separately returned to him because it was not accompanied by a notice of appeal. (*See id.*, Ex. 23, 24 at PageID 248–53, 280–82; Doc. 9 at PageID 3075–95). Both letters returning his documents informed petitioner that he could file a motion for a delayed appeal. (*See id.* at PageID 280–81).

As noted above, petitioner's delayed appeal motion was filed on August 24, 2017 (Doc. 4, Ex. 23, 24) and was granted by the Ohio Supreme Court on November 1, 2017. (Doc. 4, Ex. 25). Petitioner was ordered to "file a memorandum in support of jurisdiction within thirty days from the date of this entry." (*Id.* at PageID 282). Petitioner's appeal was dismissed on December 5, 2017 for want of prosecution. (Doc. 4, Ex. 26). Petitioner took no further action until March 9, 2018, when he unsuccessfully filed a motion to reinstate his appeal. (*See* Doc. 4, Ex. 27).

the timeliness requirements for an appeal to the Ohio Supreme Court . . . constitute[s] adequate and independent state grounds to preclude hearing an untimely claim on the merits"). Here, as in *Bonilla* and *Baker*, because petitioner failed to file a timely appeal to the Ohio Supreme Court and then after the Ohio Supreme Court granted petitioner leave to file a delayed appeal, he failed to provide a memorandum in support of jurisdiction, the state's highest court never had the opportunity to consider the merits of the claims alleged in the petition.

Consequently, by failing to fairly present his constitutional claims to the Ohio Supreme Court, petitioner has waived his claims absent a showing of cause for his default and actual prejudice as a result of the alleged errors, or that the failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750. *See also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

No such showing has been made in this case. As he did in his motion to reinstate his appeal—filed several months after his case was dismissed for want of prosecution—petitioner claims that he in fact filed his memorandum in support of jurisdiction to the Ohio Supreme Court. (*See* Doc. 4, Ex. 27 at PageID 286–87; Doc. 9 at PageID 2952). However, as noted above (*see supra* n.4), petitioner's memorandum was not filed and was returned to him. Petitioner had the opportunity to pursue his claims after the Ohio Supreme Court granted his motion for a delayed appeal and ordered him to file a memorandum in support of jurisdiction within thirty days. Petitioner has not provided any cause for his failure to do so.

Finally, petitioner has not demonstrated that a fundamental miscarriage of justice will occur if his procedurally-defaulted claims for relief are not considered or, in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See*

*Murray,* 477 U.S. at 495–96. *See also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498. To establish a credible claim of actual innocence sufficient to excuse his procedural default, petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324.

Petitioner must also show "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, including that evidence alleged "to have become available only after the trial." *Id.* at 327–28. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. The Court notes that actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). *See also Hilliard v. United States*, 157 F.3d 444, 450 (6th Cir. 1998). The actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Schlup,* 513 U.S. at 321.

Petitioner has not demonstrated that his procedural defaults should be excused under the "fundamental miscarriage of justice" exception. Therefore, petitioner has procedurally defaulted and waived the claims raised in the petition.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484–85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[5]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

   *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[5] Because this Court finds that the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his grounds for relief. *See Slack*, 529 U.S. at 484.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JERRY AGOSTINI,
    Petitioner,

vs.

WARDEN, PICKAWAY
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:18-cv-862

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).